UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SHAHNAZ HAERI MEHNEH,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **ANTONY J. BLINKEN,** *et al.*, <br><br> **Defendants.** | No. 24-cv-1374-ZMF |

## MEMORANDUM OPINION

Nearly eighty-seven months ago, Plaintiff Shahnaz Haeri Mehneh ("Haeri Mehneh"), a U.S. citizen, filed an immigration visa application on behalf of her foreign husband, Plaintiff Aliasghar Nejat ("Nejat"), an Iranian national. *See* Compl. ¶¶ 64–65, ECF No. 1. About twenty-three months ago, Nejat completed his visa interview. *See* Compl. ¶ 71. Plaintiffs have yet to receive a final adjudication of Nejat's visa application. They ask this Court to compel Defendants to make a decision. For the reasons below, the undersigned GRANTS Defendants' motion to dismiss this case.

**I.    BACKGROUND**

    A.    Legal Background

The Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1101 *et seq.*, governs the issuance of visas to immigrants seeking admittance into the United States. *See* 8 U.S.C. § 1201. A U.S. citizen or lawful permanent resident seeking lawful permanent resident status for their spouse must first file a Form I-130, *Petition for Alien Relative* ("Form I-130") with the U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. § 204.1(a)(1) (2024). If USCIS approves the Form I-130, the case is then sent to the National Visa Center ("NVC"). *See* 8 C.F.R.

1

§ 204.2(a)(3). The foreign spouse must then submit an application to the NVC and await an interview with a consular officer. *See* 22 C.F.R. §§ 42.61–62 (2024). After the interview, the consular officer will either issue the visa or deny the application. *See* 22 C.F.R. § 42.81(a). If a consular officer determines that an applicant lacks sufficient information to establish visa eligibility, the officer may refuse the application under Section 221(g) of the INA—the statutory provision at issue here. Section 221(g) provides that "no visa . . . shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g).

B.    Factual Background

Haeri Mehneh and Nejat have been married for fifty years. *See* Compl. ¶ 1. On September 22, 2017, Haeri Mehneh filed a Form I-130 for Nejat. *See id.* ¶ 66. After USCIS approved the Form I-130, it forwarded Nejat's petition to the NVC. *See id.* ¶ 67. On April 8, 2022, the NVC notified Nejat that his case was documentarily complete. *See id.* ¶ 70.

On January 23, 2023, Nejat completed his interview. *See* Pls.' Resp. Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n") 2, ECF No. 11. USCIS then placed his application into mandatory administrative processing. *See* Compl. ¶ 72. On January 23, 2023, the Consular Section requested additional information from Nejat via a questionnaire mirroring Form DS-5535, *Supplemental Questions for Visa Applications* ("DS-5535"). *See id.* ¶ 73. On January 25, 2023, Nejat submitted his response. *See id.* ¶ 74.

Since then, Nejat's visa application status on the State Department website has remained "[r]efused." *See id.* ¶ 76. In response to Plaintiffs' inquiries, the State Department has stated that Nejat's case is undergoing additional administrative processing. *See id.* ¶¶ 76–79. Plaintiffs allege severe emotional distress, psychological harm, and financial strain because of their separation. *See id.* ¶¶ 85–89.

C.  Procedural Background

On May 11, 2024, Plaintiffs filed this action against Antony J. Blinken, in his official capacity as U.S. Secretary of State ("Secretary Blinken"), and Carson Wu, in his official capacity as Acting Director of the Office of Screening, Analysis, and Coordination ("SAC") (collectively, "Defendants"). *See generally id.*[1] Plaintiffs allege that Defendants have unreasonably delayed the adjudication of Nejat's visa application and seek to compel adjudication under 5 U.S.C. §§ 555(b), 706(1)–(2) of the Administrative Procedure Act ("APA") and the Mandamus Act, 28 U.S.C. § 1361. *See id.* ¶¶ 93–154.[2]

On July 30, 2024, Defendants filed a motion to dismiss. *See* Mot. Dismiss 1, ECF No. 7. On August 15, 2024, Plaintiffs filed their opposition. *See* Pls.' Opp'n at 1. On August 22, 2024, Defendants filed their reply. *See* Reply Supp. Defs.' Mot. Dismiss ("Defs.' Reply") 1, ECF No. 12.

---

[1] Robert Jachim has since assumed the role of Acting Director of SAC, *see* Pls.' Moti. Substitute Party ¶¶ 1–2, ECF No. 9, and is substituted as Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d)(1). *See* Min. Order (Aug. 28, 2024).

[2] Plaintiffs also assert a Fifth Amendment claim, alleging that Haeri Mehneh's "[c]onstitutional [r]ight to [d]ue [p]rocess" was violated when Defendants failed to "timely provide a final adjudication of her husband's visa application." Compl. ¶ 158. However, Haeri Mehneh does not possess procedural due process rights in connection with her noncitizen husband's visa application because U.S. citizens do "not have a fundamental liberty interest in [their] noncitizen spouse[s] being admitted to the country." *Dep't of State v. Muñoz*, 602 U.S. 899, 909 (2024). Accordingly, Plaintiffs' Fifth Amendment claim will be dismissed.

## II.  LEGAL STANDARD

A court must dismiss a complaint that "lack[s] . . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). On a motion to dismiss, the plaintiff bears the burden of establishing subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992). The court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Separately, a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must "treat the complaint's factual allegations as true . . . and . . . grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations and quotation marks omitted). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III.   DISCUSSION

### A.   Improper Defendants

Defendants first move to dismiss the case under Rule 12(b)(1) because Secretary Blinken and Robert Jachim are not proper defendants. *See* Mot. Dismiss at 7–9. Defendants argue that Secretary Blinken and Robert Jachim have "no role and no authority" to re-adjudicate Nejat's visa application and are not "involved in the alleged delay." Mot. Dismiss at 1, 7.

#### 1.   *Secretary of State*

The INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). However, "[c]ontrol over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022). Here, "[t]he Secretary of State can provide relief [to Plaintiffs] by directing consular officers to adjudicate pending visa applications 'within a reasonable time,' 5 U.S.C. § 555(b)." *Mashaghzadehfard v. Blinken*, No. 23-cv-3164, 2024 WL 4198689, at *3 (D.D.C. Sept. 16, 2024). Such an order would redress Plaintiffs' harms. *See, e.g.*, *Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024).[3]

---

[3] Defendants relied on *Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551 (D.D.C. May 9, 2024), to argue that Secretary Blinken cannot redress the relief requested. *See* Mot. Dismiss at 8. *Yaghoubnezhad* involved interpretation of 8 U.S.C. § 1104(a). *See Yaghoubnezhad*, 2024 WL 2077551, at *5. Judge McFadden concluded that given the "clear textual limitation," he would not assume that the Secretary of State has "residual authority to control the timing by which consular officers consider applications presented to them." *Id.*; *see also Zakeri v. Blinken*, No. 23-cv-3162, 2024 WL 3273418, at *3 & n.3 (D.D.C. July 2, 2024) (following *Yaghoubnezhad*). However, Judge Moss disagreed with *Yaghoubnezhad* in *Janay v. Blinken*, No. 23-cv-3737, 2024 WL 3432379 (D.D.C. July 16, 2024). Judge Moss concluded that "the Court can discern no 'clear

2. *Director of SAC*

Robert Jachim is the Acting Director of SAC. Pls.' Moti. Substitute Party ¶ 2. SAC influences both the outcome and the timeline of consular officers' visa application decisions. *See generally* Compl., Ex. A, Decl. Carson Wu, ECF No. 1-1. SAC has the "primary responsibility for screening noncitizens who apply for U.S. visas for potential security-related grounds of visa ineligibility." *Id.* ¶ 2. "SAC analysts provide consular officers with Security Advisory Opinions ("SAO") responses related to grounds of visa ineligibility and inadmissibility under [S]ection 212(a)(3) of the [INA]." *Id.* ¶ 2. If the consular officer determines that a visa application is ineligible under INA Section 212(a)(3), "then the officer is required to refuse the application under INA [S]ection 221(g) and to request a SAO from SAC, which initiates an interagency security review." *Id.* ¶ 15. "In any case in which a SAO is required, a consular officer must wait for a response, which will provide a recommendation on whether sufficient information exists to support a security-related ineligibility finding." *Id.* ¶ 19. "[C]ompletion of SAO responses depends on . . . a variety of . . . factors . . . [, and] SAO requests can be neither addressed nor resolved in a first-in-first-out basis." *Id.* ¶ 27.

Nejat's application went through such process. The consular officer refused Nejat's visa application under Section 221(g) and used Nejat's response to Form DS-5535 to request a SAO.

---

textual limitation,' on the face of 8 U.S.C. § 1104(a), which would bar the Secretary of State from directing consular officers to conclude matters presented to them 'within a reasonable time[.]'" *Janay*, 2024 WL 3432379, at *7 (internal citations omitted). This Court finds *Janay* persuasive. Section 1104(a) of the INA does narrowly limit the Secretary of State's broad authority regarding consular officers' discretion to issue immigrant visas to properly applying individuals. But Section 1104(a) does not otherwise limit the Secretary's expansive regulatory and enforcement powers under the INA. *See id.* Numerous judges in this District have similarly concluded that the Secretary of State is a proper defendant. *See, e.g.*, *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023); *Bahrami v. Blinken*, No. 23-cv-1477, 2024 WL 3638200, at *2 (D.D.C. June 28, 2024).

*See* Compl. ¶ 73–76. Because Nejat's visa application involves a SAO, Robert Jachim has authority over adjudication of the application and the power to grant the relief requested.

  B.  <u>Consular Nonreviewability Doctrine and Clear and Non-Discretionary Duty</u>

Next, Defendants raise two related threshold challenges: that (1) the doctrine of consular nonreviewability bars Plaintiffs' claims, *see* Mot. Dismiss at 9–20, and (2) Plaintiffs fail to identify a discrete agency action that a consular officer is required to take, *see id.* at 20–29.

    1.  *Consular Nonreviewability Doctrine*

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). "The [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024).

However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to *final decisions* and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11 (emphasis added). That is, "when an application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final, and thus claims alleging unreasonable delay while a case remains suspended in administrative processing are not barred by the doctrine of consular nonreviewability." *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022) (quotations marks omitted). "As other courts have found, the focus should be on what is actually happening; even if the the State Department chooses to characterize a [S]ection 221(g) notification as a 'refusal,' an interim decision is not sufficiently

7

final to warrant the application of the doctrine [of consular nonreviewability].'" *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020).

Defendants argue that the nonreviewability doctrine applies because the consular officer "has refused" Nejat's visa. Mot. Dismiss at 18. But a § 221(g) refusal is not the State Department's final answer. "[T]he U.S. Embassy . . . [has] confirmed that [Nejat's] case remains in administrative processing." Compl., Ex. C, Email from Senator Moran's office 1, ECF No. 1-3. This processing involves active investigating. For example, after "refusing" Nejat's visa application, the Consular Section requested a form mirroring Form DS-5535 from Nejat. *See* Compl. ¶ 73. In addition, the language of the "refusal" itself suggests continued consideration: "your case will remain refused while undergoing [administrative] processing. You will receive *another* adjudication once such processing is complete." Compl., Ex. D, Immigrant Visa Application: Refused 1, ECF No. 1-4 (emphasis added). "In similar cases, the consular nonreviewability doctrine has been found inapplicable where, as here, a consular officer's refusal under 8 U.S.C. § 1201(g) places a visa application in administrative processing for further consideration." *Sereshti v. Gaudiosi*, No. 24-cv-1288, 2024 WL 4625802, at *4 (D.D.C. Oct. 30, 2024).

Defendants respond that the D.C. Circuit has recently determined that a § 221(g) refusal is a final decision. *See Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024). But *Karimova* is unpublished. *See id.* And "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2); *see also* U.S. Ct. App. D.C. Cir., *Handbook of Practice and Internal Procedures* (Rule 36(e)(2) means "there is [] no need for counsel to base their arguments on unpublished dispositions" and that an unpublished decision "does not add anything to the body of law already

established and explained in the Court's published precedents."). Indeed, "because the panel issuing [an unpublished] disposition must unanimously agree that it does not 'alter[], modif[y], or significantly clarif[y] a rule of law,' these decisions are frequently announced in a way that makes them not suitable for governing future cases." *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (internal citations and quotation marks omitted).

Judges in this District are split as to following *Karimova*. Two judges have refused. *See Baygan v. Blinken*, No. 23-cv-2840, 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024); *Hajizadeh*, 2024 WL 3638336, at *3 n.3. Others have followed, some only begrudgingly. Judge Jackson followed but described *Karimova*'s holding as "troubl[ing]" and "extremely difficult to square . . . with the communications that visa applicants actually receive from various consulates." *Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *3 & n.2 (D.D.C. Sept. 6, 2024). This Court joins others in finding *Karimova* nonbinding.

The State Department must conclude its consideration process for its decision to be *final*. The definition of final demonstrates this: "[m]arking the last stage of a process; leaving nothing to be looked for or expected." *Final*, *Oxford English Dictionary*, (2d ed. 1989); *Cf. United States v. Clawson*, 842 F. Supp. 428, 432 (D. Or. 1994) ("Conversely, a non-final conviction is by definition one where a direct appeal is pending in the state courts."). But Nejat is not in the last stage of the process. The State Department explicitly directed Nejat to look for or expect "*another* adjudication once such processing is complete." Immigrant Visa Application: Refused 1. To treat this as a final decision would create a perverse incentive for the State Department to refuse applications out of hand and then begin the true deliberation process thereafter. Under this paradigm, there would be no possibility for judicial oversight of untimely decision making. That is unacceptable. As Defendants acknowledge, judicial oversight is permitted for "*procedural* considerations [such as]

9

the pace of discretionary administrative processing." Mot. Dismiss at 10 (quotation marks omitted) (citing *Al-Gharawy*, 617 F. Supp. 3d at 12). Here, Plaintiffs permissibly challenge procedural aspects of the *ongoing* review of Nejat's visa application. *See Al-Gharawy*, 617 F. Supp. 3d at 12. Accordingly, the doctrine of consular nonreviewability does not bar Plaintiffs' claims.

    2.    *Clear and Non-Discretionary Duty*

"To state a claim for unreasonable delay [under the APA], [the p]laintiffs must . . . allege that the agency 'failed to take a discrete agency action that it is required to take[.]'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). To obtain a writ of mandamus, the plaintiffs must show "(1) a clear and indisputable right to relief; (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Therefore, "to proceed under either the APA or the Mandamus Act based on a claim of 'an agency's unreasonable delay . . . , a plaintiff must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action.'" *Sharifishourabi v. Blinken*, No. 23-cv-3382, 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024)).

"Granting or refusing a visa to [a plaintiff] who has been interviewed is clearly a discrete agency action . . . required by both the APA and the Department's own regulation." *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023).[4] "Issuing a final

---

[4] Some courts assume without deciding that there is a clear and non-discretionary duty under either the APA or INA to adjudicate their applications within a reasonable time. *See, e.g.*, *Dalmar v. Blinken*, No. 23-cv-3315, 2024 WL 3967289, at *3 (D.D.C. Aug. 26, 2024) ("The Court will assume without deciding that the plaintiffs have alleged that the defendants are subject to a discrete, required duty."); *Giza v. Blinken*, No. 23-cv-1641, 2024 WL 3967284, at *4 (D.D.C. Aug. 27, 2024) ("The Court need not decide whether the INA or its regulations impose this duty because,

decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations." *Hajizadeh*, 2024 WL 3638336, *3. The APA "imposes a general but nondiscretionary duty upon the [the State Department] to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes [this Court] to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). "[The INA r]egulations require that a consular officer 'must . . . properly and promptly' process a visa application, 22 C.F.R. § 41.106, and either 'issue" or "refuse' a completed visa application[, *i*]*d.* § 41.121(a)." *Vulupala*, 438 F. Supp. 3d at 100. Moreover, Section 42.81(e) of the INA creates a nondiscretionary duty requiring consular officers to reconsider within a reasonable time visa applications refused under Section 221(g) and placed under administrative processing. *See Ghannad-Rezaie v. Laitinen*, No. 24-cv-11665, 2024 WL 4849587, at *3 (D. Mass. Nov. 21, 2024). *But see Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551, at *8 (D.D.C. May 9, 2024) (concluding that the State Department's nondiscretionary duty is "discharged" after the consular officer refused the visa applications under Section 221(g)). Thus, Plaintiffs have identified a clear, non-discretionary duty requiring a consular officer to adjudicate Nejat's visa application.

Defendants again turn to *Karimova* to find otherwise. *See* Mot. Dismiss at 25. The *Karimova* court held that the plaintiff did not show a clear, nondiscretionary duty or discrete action that the defendants failed to perform. *See* 2024 WL 3517852, at *3. And again, this Court does not follow the unpublished *Karimova* decision. *See supra* Part III.B.1. Moreover, the narrow scope of *Karimova* makes it inapplicable. *Karimova* focused solely on "Section 555(b) of the APA as the

---

either way, the [plaintiffs] have not plausibly alleged that the delay in adjudicating their visa applications is unreasonable."). This Court will note make that assumption.

11

source of the consular officer's alleged duty to act." *Karimova*, 2024 WL 3517852, at *3. Plaintiffs here also bring claims under Section 706(1)–(2) and assert a series of duties under the INA and its implementing regulations. *See* Pls.' Opp'n at 21–30. *Karimova* did not consider these sources. But this Court does, and it finds that they create a duty to act. *See Norton*, 336 F.3d at 1099; *Vulupala*, 438 F. Supp. 3d at 100; *Ghannad-Rezaie*, 2024 WL 4849587, at *3.

C. Unreasonable Delay[5]

"Courts review claims of unreasonable delay in processing immigration petitions according to 'the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361.'" *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).

To determine unreasonably delay, this Court must analyze the six "*TRAC* factors":

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

---

[5] Plaintiffs contend that addressing the unreasonable delay claim is inappropriate at the motion-to-dismiss stage because it involves a factual question. *See* Pls.' Opp'n at 31. However, it is appropriate to decide the claim now "because 'this record contains enough facts to evaluate the *TRAC* factors now.'" *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 161 (D.D.C. 2022) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).

>court need not find any impropriety lurking behind agency lassitude to hold that agency action is unreasonably delayed.

*See TRAC*, 750 F.2d at 79–80 (internal citations and quotations omitted).

    1.    *First and Second TRAC Factors*

Courts typically consider the first two factors together. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). Those factors evaluate "'whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale.'" *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 161–62 (D.D.C. 2022) (quoting *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)).

Plaintiffs filed suit sixteen months after Nejat's interview. *See, e.g.*, Compl. ¶ 14.[6] Plaintiffs allege a Congressional timetable exists because 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." *See* Pls.' Opp'n at 38 (citing 8 U.S.C. 1571(b)). However, "[t]he 180-day period cited by Plaintiff is no more than an 'aspirational statement' that does not establish a firm timetable." *Khan v. Bitter*, No. 23-cv-3046, 2024 WL 3887378, at *3 (D.D.C. Aug. 20, 2024) (quoting *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th

---

[6] In their complaint, Plaintiffs allege that USCIS delayed the visa application adjudication sixteen months after the interview on January 13, 2023. *See, e.g.*, Compl. ¶ 4, 14. In their opposition, Plaintiffs reference other start dates for counting the delay: when Nejat became documentarily qualified on April 28, 2022, amounting to twenty-eight months, *see* Pls.' Opp'n at 1, and when Nejat submitted the I-130 petition on September 22, 2017, amounting to eighty-two months, *see id.*

The Court calculates the delay to be sixteen months, as alleged in the Complaint. *See Arab v. Blinken*, 600 F. Supp. 3d 59, 62 (D.D.C. 2022) (calculating delay for visa application by relying on date in the complaint). Even if the Court calculated the delay off these other dates, the outcome would be the same.

330, 344 (D.C. Cir. 2023)). Plaintiffs themselves concede that the language in the provision is "merely precatory." Pls.' Opp'n at 38.[7]

In fact, "Congress has supplied no timeline for processing waiver applications." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* at *6 (citation omitted) (collecting cases). In addition, "many courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020). Thus, Plaintiffs' sixteen-month delay is not unreasonable by comparison. *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (finding thirty months not unreasonable); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding twenty-nine months not unreasonable). Accordingly, the first and second *TRAC* factors favors Defendants.

2. *Third and Fifth TRAC Factors*

*TRAC* factors three and five concern the delay's impacts on a plaintiff's health, welfare, and interests prejudiced. *See TRAC*, 750 F.2d at 79–80. The effects of a long and indefinite separation on the physical and mental health of spouses are a valid interest considered under these

---

[7] Plaintiffs also cite to 9 FAM 504.7-2(b), which is titled "Timeliness of Interview." *See* Pls.' Opp'n at 38–39. Section 504.7-2(b) states "immediate relative (and fiancé(e)) visas [should] be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security." However, this provision has no bearing on the delay in question. This provision "merely requires that the Department 'process' the applications within 30 days, but it does not require a final adjudication of the application within that period. . . . indeed, [Nejat] has already been interviewed." *Janay*, 2024 WL 3432379, at *12.

14

factors. *See Eljalabi v.* Blinken, No. 21-cv-1730, 2022 WL 2752613, at *7 (D.D.C. July 14, 2022) (collecting cases).

Plaintiffs have pleaded sufficient facts to establish the psychological, emotional, and financial harm they have suffered due to the delay in visa adjudication. *See* Compl. ¶¶ 83–89. This delay has resulted in family separation and uncertainty about reunification. *See id.*; *see also Eljalabi*, 2022 WL 2752613, at *7 (factors three and five weigh in the plaintiff's favor due to negative impact of the delay on the plaintiff's marriage). "This Court acknowledges that the prolonged and indefinite separation of [Haeri Mehneh and Nejat] may place [their] health and welfare at stake." *Arab*, 600 F. Supp. 3d at 71; *see* Compl. ¶¶ 83–89. As such, the third and fifth *TRAC* factors weigh in Plaintiffs' favor. *See id.*[8]

### 3. Fourth TRAC Factor

The fourth *TRAC* factor requires courts to consider the effects of expedited action on the agency's "higher or competing" priorities. *TRAC*, 750 F.2d at 79–80. It "carries the greatest weight in many cases." *Sawahreh*, 630 F. Supp. 3d at 163 (quoting *Milligan*, 502 F. Supp. 3d at 319).

Plaintiffs seek an order compelling Defendants to adjudicate Nejat's immigrant visa application "immediately." Compl. ¶ 15. Plaintiffs argue that Nejat deserves priority given the length of the delay and the fact that he is the spouse of a U.S. citizen. *See* Pls.' Opp'n at 40.

Consular "processing capacity is presently a zero-sum game." *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022). Granting Plaintiffs relief would require "putting [Nejat] at the head of the queue" and moving other applicants, many of whom are likely facing similar or perhaps worse harms, back with "no net gain." *Mashpee Wampanoag Tribal*

---

[8] Defendants assert that prioritizing Plaintiffs' visa application could divert resources from other similar cases, thereby prejudicing other noncitizens. *See* Mot. Dismiss at 38. This argument, however, is more appropriately addressed under the fourth *TRAC* factor.

*Council, Inc.*, 336 F.3d at 1100. "Federal agencies, not the Court, are best positioned to manage the backlog of immigration cases." *Dastagir*, 557 F. Supp. 3d at 167. Hence, "judicial 'reordering[s] [of] agency priorities' are inappropriate where '[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" *Ghadami*, 2020 WL 1308376, at *9 (quoting *In re Barr Lab'ys., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)). "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Following other courts, this Court will not engage in judicial reordering by allowing Plaintiffs to skip the line. *See, e.g.*, *Arab*, 600 F. Supp. 3d at 71 (deferring to "the State Department's priority-setting and resource-allocation" in I-130 visa application adjudication); *Mashaghzadehfard*, 2024 WL 4198689, at *5 (rejecting judicial intervention to reorder priority in an I-130 visa application adjudication). Thus, the fourth *TRAC* factor weighs in Defendants' favor.

    4.    *Sixth TRAC Factor*

The sixth *TRAC* factor requires courts to consider "whether the agency's bad faith caused the delay." *Sawahreh*, 630 F. Supp. 3d at 164. "[T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (quotation marks omitted).

Plaintiffs allege that Defendants' failure to adjudicate Nejat's visa application is alone "an act of extreme bad faith." Pls.' Opp'n at 44. However, "this conclusory statement does not evidence the type of agency misconduct this factor seeks to identify." *Mashaghzadehfard*, 2024 WL 4198689, at *6 (quotation marks omitted). "As *TRAC* directs, . . . the lack of plausible allegations of impropriety does not weigh against [Plaintiffs], but instead is neutral in the analysis."

*Hajizadeh*, 2024 WL 3638336, at *6 (quoting *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023)). Thus, the sixth *TRAC* factor does not favor either side.

Taken together, the *TRAC* factors weigh in favor of Defendants. Thus, Plaintiffs have "not plausibly allege[d] an unreasonable delay." *Azeez v. Murphy*, No. 23-cv-1947, 2024 WL 3924565, at *6 (D.D.C. Aug. 23, 2024). As such, Plaintiff have failed to state a claim. *See id.* (dismissing similar case for failing to state a claim where the first, second, and fourth *TRAC* factors favored the defendant).

## IV.     CONCLUSION

The Court is sympathetic to the suffering Plaintiffs have experienced due to the delay in final adjudication. But that consideration cannot justify allowing this case to proceed where the law requires dismissal.

Date: December 16, 2024

                                                                               _____
                                                                               ZIA M. FARUQUI
                                                                               UNITED STATES MAGISTRATE JUDGE